**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CORA LEE LOWE, | : | CIVIL ACTION NO. **3:CV-12-0764** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| POCONO MEDICAL CENTER, *et al.*, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

## I.  BACKGROUND.

On April 24, 2012, Plaintiff, Cora Lee Lowe, a former employee of Defendant Pocono Medical Center ("PMC"), filed, through counsel, a Complaint alleging claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Pennsylvania Human Resources Act ("PHRA"), 43 Pa.C.S.A. §951, *et seq.*  (Doc. 1). Plaintiff also named as Defendants Karen Mongi and Diedre Ueberroth, both employees of PMC.  Plaintiff paid the filing fee. Defendants were served with Plaintiff's Complaint and counsel entered his appearance for all Defendants.

On April 26, 2012, Defendants Mongi and Ueberroth filed a Motion to Dismiss Plaintiff 's original Complaint. (Doc. 4).  Plaintiff then filed an Amended Complaint on April 30, 2012, against all three Defendants.   (Doc. 6).   Plaintiff again alleged violations of the ADEA and PHRA. Defendants were served with Plaintiff 's Amended Complaint.  The Court deemed the Motion to Dismiss Plaintiff's original Complaint filed by Defendants Mongi and Ueberroth as moot.

On May 14, 2012,  Defendants Mongi and Ueberroth filed a Motion to Dismiss Plaintiff 's Amended Complaint under Fed.R.Civ.P. 12(b)(6).  (Doc. 9).  Defendants' Motion was briefed.  On July 24, 2012, the Court issued a Memorandum and Order, and denied the Motion.  (Doc. 12). The Court found that Plaintiff had stated a claim against the two individual Defendants under §955(e) of the PHRA since "[a]s Plaintiff's supervisors, Defendants Mongi and Ueberroth can be found to share the intent and purpose of Defendant PMC and therefore can be found liable under §955(e) for their alleged direct acts of discrimination and the ultimate decision to terminate Plaintiff for an unlawful reason." The Court concluded that Plaintiff had sufficiently alleged in her amended pleading that "Defendants Mongi and Ueberroth, through their false allegations and by terminating Plaintiff, share the intent and purpose of Defendant PMC."  (*Id.*, p. 8).

Defendants jointly filed an Answer to Plaintiff's Amended Complaint, with Affirmative Defenses, on September 28, 2012, with attached Exhibits, A-C.  (Docs. 15, 15-1, 15-2 & 15-3).

Subsequently, the parties consented to proceed before a Magistrate Judge for all matters, including trial, pursuant to 28 U.S.C. §636(c), and this case was re-assigned to the undersigned. (Doc. 18).

The Court issued a Scheduling Order setting, in part, deadlines for discovery and dispositive motions, and the deadlines were then extended three times.   (Docs. 21, 27 & 29). The final discovery deadline was December 2, 2013.  Neither Plaintiff nor Defendants timely filed any Motion to Compel during the discovery period.

On January 2, 2014, Defendants timely filed a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56.  **(Doc. 30).**  Defendants attached their Statement of Material Facts ("SMF") to their

Motion along with Exhibits. (Docs. 30-1 through 30-7). On January 15, 2014, Defendants filed their brief in support of their Motion for Summary Judgment with attached Exhibits. (Docs. 31, 31-1, 31-2 & 31-3). On February 4, 2014, Plaintiff filed her opposition brief to Defendants' Summary Judgment Motion with attached Exhibits (Docs. 32, 32-1, 32-2 & 32-3) and, her Answer to Defendants' SMF (Doc. 33). On February 28, 2014, Defendants filed their reply brief with attached Exhibits. (Docs. 36, 36-1 through 36-4). Defendants' Summary Judgment Motion is now ripe for review.

On March 3, 2014, Plaintiff filed a Motion *in Limine* seeking to preclude Defendants from relying upon documents, both with respect to their Summary Judgment Motion and at trial, which she alleges Defendants wilfully withheld from her during discovery, namely, coding completion screens obtained from the Siemans Medical Record Access System. **(Doc. 38).** In particular, Plaintiff requests the Court to strike Defendants' reply brief and attached Exhibits (Docs. 36, 36-1 through 36-4) insofar as they relate to the stated documents. On March 17, 2014, Defendants filed their opposition brief to Plaintiff's Motion *in Limine* with attached Exhibits. (Docs. 40, 40-1 & 40-2). Plaintiff did not file a reply brief in support of her Motion *in Limine* and the time to do so has expired.

The Court agrees entirely with Defendants that there is no merit to Plaintiff's Motion *in Limine*. Initially, as Defendants point out, Plaintiff did not seek to confer with them in an effort to obtain the stated documents sans court intervention as required by Rule 37(1). (Doc. 40). Nor did Plaintiff file a Motion to Compel during the discovery period under Rule 37(3), despite the fact that the Court extended this period three separate times. Also, the Court agrees with Defendants that

since Plaintiff failed to follow the procedures outlined in Rule 37 and discovery is closed, the Court should consider her Motion *in Limine* as an untimely Motion to Compel.  *See Molina v. Pocono Medical Center*, Civil No. 11-2276, M.D. Pa.(12-5-13 Order, J. Mannion).  (Doc. 40-1).

The Court also finds no merit to Plaintiff's Motion *in Limine*.  In their August 2013 depositions, Defendants Mongi and Ueberroth identified  "3M Reports" and coding "completion screens" relating to the audit process which was conducted by Defendants and which Defendants contend showed large blocks of unproductive time for which Plaintiff was paid and which lead to Plaintiff's termination.  Defendants state that the coding "completion screens merely provide the backup information for the audit" and, thus substantiate the deposition testimonies of  Defendants Mongi and Ueberroth.   Defendants also state that at no time during the depositions of Mongi and Ueberroth did Plaintiff request that the "3M Reports" or the "completion screens" be printed and produced to her.  Defendants further state that Plaintiff never requested the screens during the following months.  Plaintiff contends that she requested the screens in her Interrogatories, which were served on Defendants prior to the depositions of Mongi and Ueberroth.  The Court agrees with Defendants that since Plaintiff's Interrogatories to them pre-dated the identification of  the coding "completion screens" by Mongi and Ueberroth in their depositions, Plaintiff failed to timely request the screens during the discovery process. Even though Plaintiff failed to make timely discovery requests for the "3M Reports" or the "completion screens" relating to the audit process which Defendants Mongi and Ueberroth identified in their depositions, and even though Plaintiff did not try and resolve the matter concerning the "completion screens" with Defendants and then file a Motion to Compel, Defendants subsequently produced the 162 "completion screens" to

4

Plaintiff on February 27, 2014. (*See* Doc. 40, Ex. B & Doc. 40-2). Thus, the Court finds that Plaintiff will not suffer any prejudice since Defendants have now provided Plaintiff with the documents at issue, namely 162 completion screens.  (Doc. 40, p. 2 & Doc. 40-2).  As such, the Court will deny Plaintiff 's Motion *in Limine*.  (Doc. 38).

Further, the Court agrees with Defendants that the coding "completion screens" and Audit Trail Reports  fall under a  hearsay exception, *i.e.*, the business record exception, Fed.R.Evid. 803(6), since the deposition testimonies of Defendants Mongi and Uebberroth as well as Uebberroth's February 27, 2014, Affidavit (*see* Doc. 36-4) establish that the entries on the screens and reports were made contemporaneously as part of PMC's routine business practice, "namely the routine audits of all [C]oders [employed by PMC]."  (Doc. 36, p. 3).  *See Ford Motor Credit Co. LLC v. Maxwell*, 2013 WL 4782597, *11 (M.D. Pa. Sept. 6, 2013)(citations omitted).   Defendants Mongi and Uebberroth were qualified witnesses to provide the foundation testimony as to the authenticity and accuracy of the reports and the coding "completion screens" and, they both clearly had the required familiarity with the reports and the coding screens and program.  (Doc. 32-2, pp. 20-32 &   Doc. 31-3, pp. 10-13, pp. 15-31).

In her Affidavit, Defendant  Uebberroth also clearly has shown that the reports and the coding "completion screens" were made contemporaneously with the act these reports and screens purport to record by someone with knowledge of the subject matter, that they were made in the regular course of PMC's business with respect to auditing PMC's Coders, and that these records were regularly kept by PMC.  (Doc. 36-4).

Thus, the Court will consider the "3M Reports" or the coding "completion screens" as well

as the Audit Trail Reports  relating to the audit process involving Plaintiff which Defendants Mongi and Ueberroth identified in their depositions and in Ueberroth's Affidavit with respect to Defendants' pending Summary Judgment Motion.  Portions of the coding "completion screens" regarding the audit of Plaintiff and her time are attached as Exhibits to Defendants' Doc. 36 reply brief.  As discussed below, the Court concurs with Defendants that the Audit Trail Reports and the completion screens as well as the testimonies of Mongi and Uebberroth show that Defendants believed Plaintiff was not productive for more than 30 hours for which she was paid, and that this was one legitimate nondiscriminatory reason for Plaintiff's termination.

This Court has jurisdiction over this action with respect to Plaintiff's federal claim, *i.e.* her ADEA claim,  pursuant to 28 U.S.C. § 1331.  *See Verdecchia v. Douglas A. Prozan, Inc.*, 274 F. Supp. 2d 712, 719 (W.D. Pa 2003).  The Court can exercise its supplemental jurisdiction over Plaintiff 's state law PHRA claim under 28 U.S.C. §1367.

## II.    ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT (DOC. 6).

The Court previously summarized the allegations in Plaintiff's Amended Complaint as follows:

> Plaintiff was hired by Defendant PMC on June 21, 1999[,] in the Medical Records Department.  (Doc. 6, ¶ 17). At the time of her termination, Plaintiff was designated as a Coder II. (Doc. 6, ¶ 19). Plaintiff alleges that "her duties included coding medical records in accordance with Medical Coding conventions, and conducting or participating in medical record audits." (Doc. 6, ¶ 20).  She further alleges that "[a]s a result of these duties, Plaintiff had and was permitted regular access to medical records of patients both for the purpose of entering medical codes, and auditing records entered by other employees." (Doc. 6, ¶ 21). On August 31, 2010, Plaintiff was terminated by Defendants Mongi and Ueberroth.  (Doc. 6, ¶ 22).  Plaintiff alleges that the reason stated for termination was "performance."  (Doc. 6, ¶ 25). [Fn 2: Plaintiff alleges

that "[a]t all times during her eleven years of employment, Plaintiff 's performance was outstanding, and she had received recognition for her performance." (Doc. 6, ¶ 23).]

Plaintiff avers that she later learned that Defendant PMC, acting through Defendants Mongi and Ueberroth, falsely claimed that she engaged in "theft of time" (receiving wages for unproductive time) and that she violated HIPPA. (Doc. 6, ¶ 26). Plaintiff alleges that those allegations are false and were known to be false by Defendants Mongi and Ueberroth. (Doc. 6, ¶ 27). Plaintiff claims that the "theft of time" charge (concerning thirty (30) hours of time when she produced no work whatsoever) was falsely made, explaining that Defendants Mongi and Ueberroth assigned Plaintiff to audits and other non-coding duties. (Doc. 6, ¶'s 28-29). Plaintiff further claims that the HIPPA violations (accessing medical records that she was not coding) was falsely made as well, explaining that she accessed those medical files while working on the audits and other non-coding duties assigned to her. (Doc. 6, ¶'s 30-31).

Plaintiff alleges that when she explained to Defendants Mongi and Ueberroth that the allegations were false, her explanation was dismissed as "no useful, exculpatory information justifying the fact that she was claiming wages." (Doc. 6, ¶'s 32-33). The explanation was referred to by Defendants as "rude, insubordinate and condescending" and was claimed as an additional reason for her termination. (Doc. 6, ¶ 34). Plaintiff "avers that these false claims were made by [Defendants Mongi and/or Ueberroth] solely to aid and abet the discriminatory actions of [Defendant PMC], and were made with a common purpose to cause Plaintiff 's termination on account of her age." (Doc. 6, ¶ 36). Plaintiff then avers that Defendant PMC "had a continuing need for [a] Coder, and that she was replaced by, or her duties reassigned to a significantly younger person." (Doc. 6, ¶ 37).

Plaintiff has requested the following relief: that the Court exercise jurisdiction over her ADEA claims and PHRA claims; award traditional tort remedies (compensatory damages, pain and suffering, physical and emotional distress, economic loss, time loss, and severe emotional trauma) under the PHRA claims; issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects; compensation with a rate of pay and other benefits and emoluments to employment, to which she would have been entitled, had she not been subject to unlawful discrimination; front pay, if appropriate; compensation for wages and other benefits and emoluments of employment lost due to Defendants' unlawful conduct; liquidated damages under the ADEA because of its willfully unlawful conduct; pre- and post- judgment interests, costs of suit and attorney and

> expert witness fees as allowed by law; reinstatement to her former
> position; attorney's fees and cost[s]; and such other relief as deemed just
> and proper. (Doc. 6, pp. 7-8).

(Doc. 12, pp. 2-3).

Insofar as Plaintiff requests as relief for the Court to issue declaratory relief declaring the alleged past practices of Defendants to be unlawful, the Court finds that declaratory relief is not appropriate in this case.

In *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Third Circuit Court stated:

> To satisfy the standing and "case or controversy" requirements of Article
> III, a party seeking a declaratory judgment "must allege facts from which
> it appears there is a substantial likelihood that he will suffer injury in the
> future." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir.2003) (citing *City of
> Los Angeles v. Lyons,* 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d
> 675 (1983)). Here, Blakeney seeks a declaration merely that defendants'
> "acts" and "policies" violate the United States and Pennsylvania
> Constitutions. He does not allege that he will be subjected to that alleged
> conduct in the future. Moreover, even if defendants violated Blakeney's
> rights in the past as he alleges, he is not entitled to a declaration to that
> effect. *See Brown v. Fauver,* 819 F.2d 395, 399-400 (3d Cir.1987)
> (directing District Court to dismiss prisoner's Section 1983 claim for
> prospective relief where appellant "has done nothing more than allege
> past exposure to unconstitutional state action").

"More generally, '[d]eclaratory judgment is inappropriate solely to adjudicate past conduct ... [n]or is declaratory judgment meant simply to proclaim that one party is liable to another.'" *Hodinka v. Delaware County*, 759 F.Supp.2d 603, 610 (E.D.Pa. 2011)(quoting *Corliss v. O'Brien*, 200 Fed.Appx. 80, 84 (3d Cir. 2006).

Plaintiff Lowe fails to allege that there is a substantial likelihood that she will suffer injury in

the future from Defendants if the Court does not issue declaratory relief. In fact, as stated, Plaintiff was terminated by Defendants on August 31, 2010, and she has not been re-hired by Defendants. Plaintiff began a new job as a Coder with a new employer about one year after her termination with PMC and she was still employed in this position as of her deposition in this case. Further, Plaintiff does not allege that there is a substantial likelihood that someday in the future she will again be subject to the alleged unlawful conduct by Defendants and suffer injury in the future. Also, as the Court in *Blakeney* stated, even if Defendants violated Plaintiff's rights in the past as Plaintiff alleged in his Complaint, he was not entitled to a declaration to that effect. *Id*.; *Hodinka v. Delaware County, supra.; Perez v. Piazza*, Civil No. 12-0227, M.D. Pa.

Therefore, because Plaintiff Lowe has not met the standards necessary for the Court to issue declaratory judgment, the Court will dismiss this request with prejudice, as we find futility in allowing Plaintiff to amend her Amended Complaint with regards to this relief request. *See Blakeney, supra;  Hodinka v. Delaware County*, *supra*.

## III.    SUMMARY JUDGMENT STANDARD.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A fact is "material" if proof of its existence or non-

existence could affect the outcome of the action pursuant to the governing law. *Anderson*, 477 U.S. at 248. "Facts that could alter the outcome are material facts." *Charlton v. Aramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that

creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination."); *Burlington v. News Corp.*, 759 F.Supp. 2d at 589-90.

## IV.    MATERIAL FACTS.

As mentioned, Defendants properly submitted their SMF (Doc. 30-1) with their Summary Judgment Motion, as they were  required to do  under Local Rule 56.1, M.D.Pa., and Plaintiff has responded to it (Doc. 33). Defendants also properly cite to the record as required with respect to all of their  SMF, ¶'s 1-15, except for ¶ 16.  Plaintiff also properly cites to the record as required with respect to all of Defendants' SMF which she denies.   The Court finds that paragraphs 1-16 of Defendants' SMF are proper material facts and are relevant to this case.[1]

Plaintiff admits paragraphs 1-8 and 11-12 of Defendants' SMF.  Plaintiff denies, in part, paragraphs 9, 10 and 13, and she completely denies paragraphs 14-16 of Defendants' SMF.[2]

---

[1]"Material facts" are those which might affect the outcome of the suit.  *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

[2]The Court notes that ¶'s 16 & 17 of Plaintiff's Response to Defendants' SMF correspond to ¶'s 15 & 16 of Defendants' SMF.

Therefore, the Court finds that paragraphs 1-8 and 11-12 of Defendants' SMF (Doc. 30-1) and the material facts stated therein are undisputed since they are supported by citation to the record and since Plaintiff has admitted them.

In ¶ 1, Defendants state that Plaintiff began her employment with PMC as a Medical Records Clerk in June of 1999.[3]   Plaintiff admits Defendants' ¶ 1.

In ¶ 2, Defendants state that Plaintiff became a home-based medical Coder for PMC in 2007.  Plaintiff admits Defendants' ¶ 2.

In ¶ 3, Defendants state that Plaintiff 's employment as a home-based medical Coder was pursuant to a written agreement (Agreement For Home-Based Medical Coding) between PMC and Plaintiff dated April 2, 2007. (Doc. 30-2).  Plaintiff admits Defendants' ¶ 3.

In ¶ 4, Defendants state that Plaintiff was at all times aware that her productivity was monitored.   Plaintiff admits Defendants' ¶ 4.

In ¶ 5, Defendants state that Plaintiff agrees to be on the clock and not doing work violates PMC's policy.   Plaintiff admits Defendants' ¶ 5.

In ¶ 6, Defendants state that Plaintiff was trained in regard to HIPPA.  Plaintiff admits Defendants' ¶ 6.

In ¶ 7, Defendants state that Plaintiff understood that she should not review any medical record without a valid work reason to do so.   Plaintiff admits Defendants' ¶ 7.

In ¶ 8, Defendants state that Plaintiff at all times understood that it was her responsibility to

---

[3]Since Defendants have cited to the record with respect to their SMF which Plaintiff admits, the Court does not repeat the cites to the record herein.

submit her work hours and that submitting false hours would result in termination or reprimand. Plaintiff admits Defendants' ¶ 8.

(*See* Doc. 30-1, ¶'s 1-8).[4]

In ¶ 9, Defendants state that Plaintiff's first discipline was on March 12, 2008, for reviewing another PMC Coder's work. (Doc. 30-3). Plaintiff denies, in part, Defendants' ¶ 9, and states that she agrees her first discipline was on March 12, 2008, for reviewing another Coder's work, but she disputes that she did it without permission. Plaintiff states that was directed to assist another Coder by Defendant Ueberroth, including a review of the other Coder's work product. Plaintiff signed the March 12, 2008, Disciplinary Action Form. The Court also notes that on the bottom of the March 12, 2008, Disciplinary Action Form, it appears that Plaintiff handwrote "Feel this is totally wrong– Was trying to help because it is too hard to learn with the way we have to be trained – Busy/Errors/your [illegible]." (Doc. 30-3).

In ¶ 10, Defendants state that the March 12, 2008, discipline was discussed with Plaintiff and that Plaintiff understood that PMC did not want her reviewing the work of others. (Doc. 30-3). Plaintiff denies, in part, Defendants' ¶ 9, and states that she agrees her first discipline was on March 12, 2008, for reviewing another Coder's work, but she disputes that she did it without permission. Plaintiff states that was directed to assist another Coder by Defendant Ueberroth, including a review of the other Coder's work product. Plaintiff also states that Defendants admitted that she never reviewed another employee's work again.

---

[4]The Court finds that all of Defendants' above stated SMF, ¶'s 1-8, are properly supported by Defendants' evidence.

In ¶ 11, Defendants state that during Plaintiff 's first discipline on March 12, 2008, for reviewing another Coder's work, Plaintiff referred to her department Director (Sean McAndrew) as a "pussy" resulting in a second discipline on March 27, 2008.  (Doc. 30-4). Plaintiff admits Defendants' ¶ 11.  The Court also notes that in the March 27, 2008, Disciplinary Action Form, issued as a "Final Warning," it stated, in part, that "Also mentioned during this final warning teleconference was the fact that we had also looked into a potential HIPPA violation when [Plaintiff] reviewed, commented, and prepared a list on medical records coded by another employee. [Plaintiff] was never instructed, nor authorized to review these patient records."  Plaintiff did not sign the March 27, 2008, Disciplinary Action Form and she wrote on the employee's signature line "I don't agree with this.  My side was not asked for so this is written on one person's side of the incident."

In ¶ 12, Defendants state that Plaintiff admits to making the vulgar comment about her department Director, in the presence of her supervisor.  With respect to her response to Defendants' ¶ 12, which Plaintiff admits, Plaintiff also states that Defendants admitted that she never engaged in any similar behavior again, and that she was not counseled or disciplined for anything other than the two events in March 2008.  Plaintiff also states that she was never counseled for not properly accounting for her time.   Plaintiff cites to the Exhibits to support her her additional response to Defendants' ¶ 12.

In ¶ 13, Defendants state that on August 31, 2010, Plaintiff was disciplined, with termination, for stealing time, and also for repeated insubordination and HIPAA violations.  Plaintiff

admits in part Defendants' ¶ 13, and she states that she agrees the disciplinary action referenced by Defendants occurred.  Plaintiff denies that the disciplinary action Defendants took against her on August 31, 2010, had any validity.  Plaintiff further states that she "unequivocally denies that she ever claimed or received payment for time that was not worked."  Additionally, Plaintiff states that Defendants admitted the only HIPPA violation of which they were aware she allegedly committed was the one referred to in ¶'s 9-10 of Defendants' SMF and which resulted in Plaintiff 's first discipline on March 12, 2008. Plaintiff also states that Defendants admitted the only insubordination of which they were aware she allegedly committed was the one referred to in ¶'s 11-12 of Defendants' SMF and which related to Plaintiff 's discipline on March 27, 2008.  Thus, Plaintiff contends that the evidence shows she did not commit repeated insubordination and HIPAA violations.  (Doc. 33, ¶ 33).  Plaintiff cites to the deposition testimony of Defendant Ueberroth, Doc. 32-2 at page 12 (N.T. pp. 42-43). The Court notes that Defendant Ueberroth also testified about another incident when Plaintiff came into the office and pulled another Coder off of their job assignment to help Plaintiff staple papers together, and stated that this incident could be construed as insubordination by Plaintiff.   (Doc. 32-2 at page 13). The Court also  notes that Defendant Ueberroth testified about Plaintiff violating work place rules regarding her repeated personal, non-work related, lengthy calls to the coding work area phone when Plaintiff was at home. Defendant Ueberroth further testified that Plaintiff was told that she was not to call in anymore to the coding area phone and to communicate by e-mail with a copy to the manager, but that Plaintiff disregarded this directive and called the front desk which would then transfer Plaintiff 's calls to the coding phone. Defendant Ueberroth also testified that she does not know if Plaintiff received any

formal or informal discipline with respect to the two stated incidents.  (*Id.*).   The Court notes that it does not find any other evidence showing that Plaintiff was disciplined for the two stated incidents.

In ¶ 14, Defendants state that prior to her termination, Plaintiff was given an opportunity to explain 34 hours of unproductive time, during a 13-day period, and that she was only able to explain 4 hours.   Plaintiff denies Defendants' ¶ 14 in its entirety.   Plaintiff points out that she testified in her deposition that she was confronted on the telephone, without any prior notice,  by Defendants  Ueberroth and Mongi with allegations of time violations, and that she was able to refer to her written notes of her daily work activities to explain what her work activities were on the days in question.   Plaintiff states that after she explained her time for the one date mentioned by Defendant Ueberroth, which covered the four hours Defendants referred to, Defendant Ueberroth abruptly terminated the phone conversation, and did not provide her with any other dates that were in question and did not allow her to explain her work activities for any other time in question.

In her October 25, 2013 deposition, Plaintiff testified that after she told Defendants she was in the ER for the four hours on the day Defendants mentioned, Defendants just wanted her off the phone.   Plaintiff stated that Defendants did not ask her about any of the other days in question. Plaintiff further stated that she offered to explain the days in question, that she asked Defendants to give her a list of the days and, that she told Defendants that she would account for her time on those days.   Plaintiff stated that Defendant Ueberroth did not provide her with the other dates in question.  (Doc. 30-7, pp. 41-42).

Plaintiff also states in her Doc. 33 Response to Defendants' SMF ¶ 14  that even though they

were not requested, after her termination, she gave her notes to her third level supervisor Lyn Lansdowne (Defendant Ueberroth's direct supervisor), and that Lansdowne later acknowledged she received Plaintiff 's notes, and forwarded them to Defendant Ueberroth.  The Court notes Plaintiff actually testified in her deposition that after her termination she gave a copy of her notes to Mary Gonzales to give them to Lyn Lansdowne and, that Lansdowne later told Plaintiff in person at a doctor's office (both Plaintiff and Lansdowne were at the doctor's office for their own personal appointments) she received the copy and gave the copy of Defendant Ueberroth.  (Doc. 30-7, pp. 22-23).

In ¶ 15, Defendants state during Plaintiff's deposition, she was given unlimited time with her personal notes to account for her time and that she was only able to account for a little over one hour of the remaining 30 hours of alleged unproductive time violations.   Plaintiff denies Defendants' ¶ 15 in its entirety.  Plaintiff states she testified at length in her deposition (*i.e.*, 15 pages of testimony) regarding her daily work activities on each date that she was questioned about with respect to the alleged unproductive time violations.  Plaintiff cites to her deposition transcript, at pages 111-126.  (Doc. 30-7).[5]  The Court finds that Plaintiff testified in her deposition (*i.e.*, Doc. 30-7, pages 111-126)  regarding her daily work activities on each date that she was questioned about  with respect to the alleged unproductive time violations.  However, the Court finds that Plaintiff did not know, for the most part, how much time she specifically spent on work activities on the dates in question.   Plaintiff repeatedly testified that she did not know how much time she spent on the specific tasks which she had written in her notes for most of the days in question.

---

[5]Plaintiff's complete deposition transcript is found at Doc. 30-5, 30-6 & 30-7.

In ¶ 16 of its SMF, Defendants state that Plaintiff testified that she could recall six Coders employed by PMC who did home-based coding in August of 2010, and that one Coder was older than she and four Coders were younger.  Plaintiff denies Defendants' ¶ 16 and states that she referred to four younger Coders and one older employee named Pat who had died and never worked in the coding department.

The Court also finds the following facts are undisputed. Plaintiff testified that after her termination by Defendants in August of 2010, she was out of work for about one year and that during this time she collected unemployment and Social Security. Plaintiff was then hired as a per diem medical coder by St. Claire's Health System, and she was working for St. Claire's Health System at the time of her deposition in this case. (Doc. 30-7, pp. 37-39).  Plaintiff also testified that she believes Defendants terminated her based on her age since similar disciplinary incidents occurred with other PMC employees, namely, Mary and Rebecca, and they were younger than Plaintiff and nothing happened to them.  Plaintiff stated that her disciplinary incidents were built up into her termination and that she did not receive the same treatment as the younger employees received.  (Doc. 30-7 pp. 39-40).

Plaintiff 's age at the time of her termination by Defendants in August of 2010, was 65.  Plaintiff testified that during her 11 years of employment with PMC, she was never subjected to any derogatory, age-based remarks. (Doc. 30-6, p. 33-34).

## V.    DISCUSSION.

As stated, Plaintiff's Amended Complaint raises  claims of age discrimination, under the

18

ADEA and the PHRA, with respect to her termination from PMC in August 2010.[6]

Plaintiff alleged in her Amended Complaint that she exhausted all of her administrative remedies before filing this action in federal court.  (Doc. 6, pp. 1-2).  Defendants do not argue in their pending dispositive motion that Plaintiff failed to exhaust her administrative remedies with respect to her age discrimination claim raised against them.  The Court notes that a Plaintiff asserting employment discrimination claims under the ADEA is required to exhaust all administrative remedies before filing an action in federal court. See Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir.1996); DeLa Cruz v. Piccari Press, 521 F.Supp.2d 424, 431 (E.D.Pa. 2007).

Defendants initially argue that Plaintiff has failed to establish a prima facie case with respect to her age discrimination claims.

The ADEA provides that:

> "[I]t should be unlawful for an employer to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  29 U.S.C. § 623(a)(2).

Thus, "the ADEA prohibit[s] employers from discriminating against qualified individuals on the basis of ... age." Verdecchia v. Douglas A. Prozan, Inc., 274 F. Supp. 2d 712, 719 (W.D. Pa

---

[6]The Court notes that the analysis of Plaintiff's ADEA claim applies equally to Plaintiff's PHRA claim.  See Rozic v. Trinity Industries, Inc., 47 Fed. Appx. 151, 152, 2002 WL 31151322 , **1 (3d Cir. Pa.); Davis v. Tammac Corp. 127 F. Supp. 2d 625, 629, n. 6  (M.D. Pa. 2000) ("Claims brought under the PHRA are analyzed under the same standards as their federal counterparts." (citations omitted)); Thimons v. PNC Bank, N.A., 254 Fed. Appx. 896, 897 n. 1 (3d Cir. 2007).

2003); *see also* 29 U.S.C. § 623(a)(1). "The ADEA prohibits age discrimination in employment decisions against persons who are at least forty years old." *Lewis v. Genesis Healthcare Corp.*, 826 F.Supp.2d 765, 775 (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996)).

An employer is defined in the ADEA as follows:

> a person engaged in industry affecting commerce who
> has twenty or more employees for each working day in
> each of twenty or more calendar weeks in the current
> or preceding calendar year . . . 29 U.S.C. § 630(b).

29 U.S.C. § 630(b).   *Verdecchia*, 274 F. Supp. 2d at 719.

There is no dispute that Defendant PMC was an employer as defined by the ADEA.

In *Duffy v. Paper Magic Group, Inc.*, 265 F. 3d 163, 167 (3d Cir. 2001), the Third Circuit stated the following elements to establish an ADEA age discrimination claim:

> The ADEA prohibits employers from discriminating against individuals
> in hiring, discharge, compensation, term, conditions or privileges of
> employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1). Age
> discrimination may be established by direct or indirect evidence. *See*
> *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) When
> evaluating ADEA discrimination claims based on indirect evidence, a
> plaintiff may establish a prima facie case of age discrimination under
> the ADEA by demonstrating that she: (1) was a member of a
> protected class, i.e., that she was over forty, (2) is qualified for the
> position, (3) suffered an adverse employment decision, (4) and was
> ultimately replaced by a person sufficiently younger to permit an
> inference of age discrimination. *See id.* at 973.

See also *Lewis v. Genesis Healthcare Corp.*, 826 F.Supp.2d at 776 (citing *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997)).

The *Duffy* Court also noted that:

> A prima facie case creates an inference of unlawful discrimination.
> The burden of production then shifts to the employer who can dispel

> the inference by articulating a legitimate, nondiscriminatory reason for
> its actions. *See Connors*, 160 F.3d at 974 n. 2. If the employer
> meets this burden, the employee must then prove by a
> preponderance of the evidence that the articulated reasons are a
> pretext for discrimination. *See id.* Where the employee is
> unable to establish a prima facie case, however, no inference of
> discrimination is raised and the employer has no burden to proffer
> a reason for any action. *Spangle v. Valley Forge Sewer Auth.*,
> 839 F.2d 171, 174 (3d Cir. 1988).

*Id.*

Thus, the ADEA does not allow "age discrimination by employers against employees and applicants for employment." *EEOC v. Zippo Mfg. Co.*, 713 F. 2d 32, 35 (3d Cir. 1983) (citations omitted). Further, this Court has held that the Plaintiff must allege an actual or *de facto* employment relationship with a Defendant as a requisite to an age discrimination claim under the ADEA. *See Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 380 (M.D. Pa. 2001). Here, as discussed above Plaintiff Lowe was undisputedly an employee of Defendant PMC for 11 years, *i.e.*, from 1999 through August 2010.

Further, the "burden-shifting framework provided by *McDonnell Douglas Corp.* [ *v. Green,* 411 U.S. 792 (1973)] has been extended to apply to discriminatory treatment cases under the ADEA." *Lewis v. Genesis Healthcare Corp.*, 826 F.Supp.2d at 775-776 (citing *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997)); *Mitchell v. City of Pitts*burgh, –F.Supp.2d–, 2014 WL 199758, *6 (W.D.Pa. Jan. 17, 2014)("When analyzing Title VII and ADEA employment discrimination claims, where no direct evidence of discrimination is presented, courts look to the framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 [] (1973)).

Additionally, in *Bates v. MHM Correctional Services*, 2008 WL 396225, *8 (M.D. Pa.), *aff'd* 321 Fed. Appx. 217, 2009 WL 984787 (3d Cir. 2009), the Court stated:

> In order to withstand a summary judgment motion, a plaintiff suing for employment discrimination under Title VII must establish that the plaintiff's protected trait "played a role in the employer's decision making process and had a determinative influence on the outcome of that process." *Monaco v. American Gen. Assurance Co.,* 359 F.3d 296, 300 (3d Cir.2004). FN10 A plaintiff may meet this burden with either direct evidence sufficient to satisfy the requirements of Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins,* 490 U.S. 288 (1989) or with indirect evidence sufficient to satisfy the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

The *Bates* Court further stated:

> Under *McDonnell Douglas,* the plaintiff must first make a *prima facie* showing of discrimination. *Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 352 n. 4 (3d Cir.1999). A plaintiff can establish a prima facie case by showing that: (1) she is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment despite her qualifications; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *Sarullo v. United States Postal Service,* 352 F.3d 789, 797 (3d Cir.2003) (citations omitted). If the plaintiff cannot establish these elements, the defendant is entitled to judgment as a matter of law. *Pivirotto,* 191 F.3d at 352 n. 4.

> When the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant and requires that it produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*

> "If the plaintiff succeeds, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. The defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the discharge; the defendant need not prove that the articulated reason actually motivated the discharge." *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 n. 2 (3d Cir.1997) (internal quotation marks and citations omitted).

*Id.* at *8-*9.

With respect to the final element of a prima face case under the ADEA, the Court in *Mitchell v. City of Pitts*burgh, stated that "the fourth prong is established by showing that the Plaintiff was replaced by someone sufficiently younger to support an inference of age discrimination." 2014 WL 199758, *6(citing *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009)).

Also, "the burden [on Plaintiff] to establish a prima facie case is not an onerous one." *Young v. St. James Management, LLC*, 749 F.Supp. 2d 281, 288 (E.D. Pa. 2010). The elements are dependent on the facts of the specific case. *Id.* (citation omitted).

The Court finds that Plaintiff Lowe has not provided direct evidence that her protected trait, *i.e.*, her age, played a role in Defendants' decision to terminate her. Thus, Plaintiff must establish her age discrimination claim with indirect evidence sufficient to satisfy the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green, supra*. Plaintiff must first establish a prima face case of discrimination under the ADEA. *See Mitchell v. City of Pitts*burgh, –F.Supp.2d–, 2014 WL 199758, *6.

Defendants argue that Plaintiff Lowe failed to establish a prima facie case of age discrimination under the ADEA. The Court disagrees.

The Court finds that Plaintiff Lowe was a member of a protected class, *i.e.,* that she was 65 years old in August 2010, she was qualified for the Coder position since she was employed by PMC as a Coder for 9 years, 2001 to 2006 as a Coder I and 2006 to 2010 as a Coder II (Doc. 30-5, pp. 9-12), and that she suffered an adverse employment decision, *i.e.,* Defendants terminated her on August 31, 2010. Further, in July 2010, Plaintiff received a performance rating of three from her

23

PMC supervisors, which was considered a "solid performance," and she received a merit pay raise. (Doc. 31-3, pp. 13-14).

Defendants do not dispute these three elements of a prima face case regarding Plaintiff's ADEA claim. (Doc. 31, p. 6). However, Defendants contend that Plaintiff has failed to establish the fourth element of a prima face case since she failed to show that she was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination. The Court agrees with Defendants that "to satisfy the fo[u]rth element of the prima face case, the Plaintiff must show that the sufficiently younger person retained was 'similarly situated.'" (*Id.*). *See Mitchell v. City of Pitts*burgh, –F.Supp.2d–, 2014 WL 199758, *6-*7. Defendants also state that "*McDonnell Douglas* teaches that it is the Plaintiff['s] task to demonstrate that 'similarly situated' employees were not treated equally." *(Id.*, citing *McDonnell Douglas Corp. v. Green,* 411 U.S. at 804). Defendants state that "[t]here is no evidence at all that 'similarly situated' employees were treated differently than the Plaintiff." (*Id.)*.

In *Mitchell v. City of Pitts*burgh, –F.Supp.2d–, 2014 WL 199758, *7, the Court stated, "[t]o be valid comparators, employees need not be 'identically situated,' but they must be similar in 'all relevant respect.'" (citations omitted). "In determining whether employees are similarly situated, the court is required to undertake 'a fact-intensive inquiry based on a whole constellation of factors." *Id.*(citation omitted). "Some of the factors to be considered are whether 'the two employees dealt with the same supervisors, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*(citations omitted). Also, "[e]mployees are not

24

similarly situated when one of the employees 'holds a different job in a different department[]" and "[t]he proposed comparators must have engaged in conduct[] of 'comparable seriousness.'" *Id.*(citation omitted).

As mentioned above, Plaintiff testified in her deposition that she believed Defendants terminated her based on her age since similar disciplinary incidents occurred with other PMC employees who were younger than Plaintiff, namely, Mary and Rebecca, and since nothing happened to them.  Plaintiff also stated that her disciplinary incidents were built up into her termination and that she did not receive the same treatment as the younger employees received. (Doc. 30-7 pp. 39-40).  The Court find that the evidence shows that all of PMC's Coders were subject to the random audits and that some of the other Coders were found to have time lapses. However, Defendant Mongi testified that the other Coders were counseled about blatant time lapses found in their audit reports but that the other Coders were not fired during the time Mongi was employed by PMC.  Also, Defendant Mongi stated that Plaintiff was not counseled or disciplined prior to August 2010, about time lapses. (Doc. 31-3, pp. 29-31).

In her opposition brief, Plaintiff points to Defendants' response to her Interrogatory No. 3, which asked: "has [Plaintiff] been replaced, or has anyone assumed any of her job functions or did anyone assume her job functions?  If so, identify the person or persons who replaced her and/or who have in the past or are performing any of the functions she previously performed, including that person['s] or persons' age.     Defendants responded: "Ms. Lowe was replaced by Robin Scaturro, a certified professional coder.  Ms. Scaturro's date of birth is [month and day are redacted], 1969." (Doc. 32, pp. 6-7 & Doc. 32-1, p. 7 and p. 15).  Thus, as Plaintiff states that she

25

was 65 years old when she was terminated and Ms. Scaturro was about 41 years old. "The fo[u]rth element of a prima facie case of age discrimination under the ADEA is that Plaintiff was 'replaced by a sufficiently younger employee to support an inference of age discrimination.'" *Id.* at *9(citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)).

Based on the undisputed facts discussed above, and based on the case law cited above, the Court agrees with Plaintiff that she has sufficiently established a prima facie case of age discrimination under the ADEA. As indicated, "Plaintiff's burden at the prima facie stage is 'not onerous.'" *Id.*(citation omitted).

The Court must now determine if Defendants have presented legitimate nondiscriminatory reasons for Plaintiff Lowe's termination. In fact, Plaintiff concedes that Defendants have presented legitimate nondiscriminatory reasons for her termination. (Doc. 32, p. 8).

Moreover, the Court agrees with Defendants, based on their SMF thoroughly detailed above, that they have presented legitimate nondiscriminatory reasons for Plaintiff Lowe's termination, namely, for stealing time, for insubordination, and for HIPPA violations. Further, as discussed below, the Court agrees with Defendants that Plaintiff Lowe has failed to establish a genuine issue of material fact exists as to whether Defendants' proffered reasons for her termination from PMC were a pretext for discrimination.

The Court in *Lewis v. Genesis Healthcare Corp.*, 826 F.Supp.2d at 776-777, stated:

> To establish that an employer's legitimate nondiscriminatory reason for discharge is pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*

*v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). Accordingly, the Court of Appeals of the Third Circuit has explained that:

> To discredit the employer's proffered reason ... the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

*Id.* at 765 (alteration in original) (citation omitted) (internal quotation marks omitted). "[I]f the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgement the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." *Id.* at 764.

Plaintiff Lowe argues that there is evidence from which a reasonable factfinder could disbelieve that Defendants PMC , Mongi and Ueberroth  terminated her for stealing time, for repeated insubordination, and for HIPPA violations.    Plaintiff states that "another employee [of PMC] was also questioned about her use of time, and was not terminated."    Exhibit 2, 72-73 [Ueberroth deposition, Doc. 32-2, pp.   19-20]. Further, Plaintiff states that before August 2010, she was never counseled or disciplined for time lapses, and that "another employee [of PMC], who was around age 50, was the only other person subjected to the level of scrutiny that Plaintiff here was subjected to, but was not terminated.  Exhibit 2, 109-112 [Doc. 32-2, pp. 28-29]."(Doc. 32, pp. 8-9). Plaintiff concludes that "[t]his evidence suggests that one time enquiries into time discrepancies was not a terminable offense, and that younger employees were not terminated, making Plaintiff's termination suggestive of age discrimination."  (*Id.*, p. 9).

Additionally, Plaintiff contends that she was not disciplined for repeated violations of HIPPA and for repeated insubordination.  Plaintiff also points out that, through her deposition testimony and her notes, she sufficiently accounted for all of the time Defendants alleged she was not productive for, *i.e.*, more than 30 hours of time for which she was paid.   Plaintiff further states that Defendants Mongi and Ueberroth failed to allow her to explain her work activities for the hours in question when they called her prior to her termination even though she told them that she could account for the time.  Plaintiff states she testified at length in her deposition (*i.e.*, 15 pages of testimony)  regarding her daily work activities on each date that she was questioned about with respect to the alleged unproductive time violations.  Plaintiff relied on her deposition transcript, at pages 111-126.  (Doc. 30-7).

As mentioned above, the Court finds that Plaintiff testified in her deposition (*i.e.*, Doc. 30-7, pages 111-126)  regarding her daily work activities on each date that she was questioned about with respect to the alleged unproductive time violations.  Significantly, however, the Court finds that Plaintiff did not know, for the most part, how much time she specifically spent on the work activities on the dates in question.   Plaintiff repeatedly testified that she did not know how much time she spent on the specific tasks which she had written in her notes for most of the days in question.  The Court also finds that Defendants Mongi and Ueberroth testified that the other employees who were found to have time lapses when they were audited did not have lapses to the extent Plaintiff was found to have, *i.e.*, 30 hours of alleged unproductive time violations, and that the other employees were able to explain their lapses.

Additionally, as stated above, the Court will deny Plaintiff 's Motion *in Limine* and  will

consider the "3M Reports" or the coding "completion screens" as well as the Audit Trail Reports relating to the audit process involving Plaintiff which Defendants Mongi and Ueberroth identified in their depositions.  The "3M Reports" showed how much time Plaintiff spent on work activities. Portions of the coding "completion screens" regarding the audit of Plaintiff and her time were submitted as Exhibits by Defendants.  Also, Plaintiff was provided with 162 "completion screens" on February 27, 2014. (*See* Doc. 40, Ex. B & Doc. 40-2).   The Court concurs with Defendants that the Audit Trail Reports, the "3M Reports"  and, the completion screens as well as the testimonies of Mongi and Uebberroth show that Defendants had a legitimate basis to believe that Plaintiff was not productive for more than 30 hours for which she was paid during a 13-day period.   As Defendants state (Doc. 31, p. 7), they "have offered documentary evidence to show the gaps in [Plaintiff 's] time.  The Defendants have offered the testimony of three witnesses who explained the gaps. [Defendant] Mongi, a Registered Health Information Technologist, characterizes the gaps as 'significant,' 'a lot of time' and 'grounds for termination.'" (Doc. 31-3, p. 31).   Thus, Defendants have shown that the magnitude of Plaintiff 's time lapses found in the audit were much more significant than the time lapses found in the other employees' audits.  Defendants further correctly state that during Plaintiff's deposition, with not time limitations and with the assistance of her notes, Plaintiff "was still only to account for a little over one hour of the remaining thirty hours."  (Doc. 31, p. 7).

Also, there is no dispute that Plaintiff was formally disciplined once for violating HIPPA and once for insubordination, namely, on March 12, 2008, and on March 27, 2008, respectively.

Defendant Ueberroth also testified about another incident that could be construed as insubordination by Plaintiff, namely, when Plaintiff came into the office of PMC and pulled another Coder off of their job assignment to help Plaintiff staple papers together.  (Doc. 32-2 at page 13). Defendant Ueberroth further testified about Plaintiff violating work place rules regarding her repeated personal, non-work related, lengthy calls to the coding work area phone when Plaintiff was at home. Defendant Ueberroth stated that Plaintiff was specifically told not to call in anymore to the coding area phone and to communicate by e-mail with a copy to the manager if she had any questions, and that Plaintiff wilfully disregarded this directive and continued to call the front desk which would then transfer Plaintiff's calls to the coding phone.

     As discussed above, the Court agrees with Defendants that Plaintiff Lowe has failed to establish a genuine issue of material fact exists as to whether Defendants' proffered reasons for her termination from PMC were a pretext for discrimination. The Court finds that Plaintiff has failed "to point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d at 764.

     As mentioned, Plaintiff argues that another employee of  PMC who was questioned about her time and lapses, for which the employee was paid, was not terminated like she was.  There is no dispute that the other employee of PMC was found to have low productivity as well as lapses in time and was not terminated.  However,  as Defendants state, "[Defendant] Ueberroth [who was involved in the investigation] goes on to state that the employee was questioned and adequately

explained the time lapses. [Defendant] Ueberroth stated the employee 'expressed a misunderstanding regarding punching in and out of the electronic time system. [The other employee] said she didn't realize that she needed to punch in and out for break and lunches.'" (Doc. 36, pp. 1-2, citing to the deposition testimony of Defendant Ueberroth Doc. 32-2, pp. 19-20).

Further, Plaintiff attempts to show that a genuine issue of material fact exists as to whether Defendants' proffered reasons for her termination from PMC were a pretext for discrimination by challenging the audit process and the "Audit Trail Report." As discussed above, the Court finds that the "3M Reports" are not inadmissible hearsay and that Plaintiff has been provided with 162 "completion screens," and it shall consider them. The Court shall also consider the deposition testimonies of Defendants Ueberroth and Mongi about the content of these produced documents. The large blocks of unproductive time which Plaintiff was found to have and for which Plaintiff was paid by PMC (*i.e.*, more than 30 hours for which Plaintiff was paid during a 13-day period), was one nondiscriminatory reason proffered by Defendants for Plaintiff 's termination. Defendants relied upon an audit process and the "Audit Trail Report" to demonstrate the large blocks of unproductive time at issue. As Defendants point out, Defendant Mongi stated that the audit was random and that all of PMC's Coders were subject to the random audits, and that the audit revealed Plaintiff 's significant unproductive time. (Doc. 36, p. 2). (*See* Doc. 31-1, pp. 15-17).

Since the Court finds that Defendants have thoroughly explained the audit and the "Audit Trail Report" in their reply brief and that the undisputed Exhibits cited by Defendants as well as the

depositions of Defendants Ueberroth and Mongi substantiate their explanation, the Court will not repeat it herein and will incorporate Defendants' summary of the audit herein.  (Doc. 36, pp. 2-3). The Court also agrees with Defendants' ultimate conclusion regarding the audit and the "Audit Trail Report," based on the completion screens and the testimonies of Defendants Mongi and Ueberroth, and finds that they "clearly establish large blocks of time for which Plaintiff was unproductive and was paid." (*Id.*).

Plaintiff also attempts to argue that Defendants' investigation into her was unfair and inaccurate and, that the testimonies of Defendants Mongi and Ueberroth were not entirely truthful. Plaintiff points out that the testimony of Defendant Ueberroth regarding the receipt of her notes about her work activities is "untruthful."

As mentioned above, Plaintiff stated in her Doc. 33 Response to Defendants' SMF ¶ 14  that even though they were not requested, after her termination, she gave her notes containing her work activities to her third level supervisor Lyn Lansdowne (Defendant Ueberroth's direct supervisor), and that Lansdowne later acknowledged she received Plaintiff's notes, and forwarded them to Defendant Ueberroth.  The Court finds that Plaintiff actually testified in her deposition that after her termination she gave a copy of her notes to Mary Gonzales to give them to Lyn Lansdowne and, that Lansdowne later told Plaintiff in person at a doctor's office that she received the notes and gave them to Defendant Ueberroth.  (Doc. 30-7, p. 22-23).  In any event, even though Plaintiff was able to account for some of the time lapses in her deposition by referring to her notes, as thoroughly discussed above, Plaintiff did not know, for the most part, how much time she specifically spent on the work activities on the dates in question.

At bottom, the Court finds that Defendants have presented legitimate nondiscriminatory reasons for Plaintiff Lowe's termination from PMC in August 2010, and that Plaintiff has failed to establish a genuine issue of material fact exists as to whether Defendants' proffered reasons for her termination from PMC were a pretext for discrimination.

Therefore, the Court shall grant Defendants' Summary Judgment Motion **(Doc. 30)** with respect to Plaintiff's age discrimination claim raised in her Amended Complaint under the ADEA. Since the Court shall enter Judgment for Defendants regarding Plaintiff's ADEA claim, it shall also enter Judgment with respect to Plaintiff's state law PHRA claim which is based on the same facts and legal theories as her federal claim.[7]

---

[7]The Court also notes that it declines to exercise supplemental jurisdiction over Plaintiff's pendent state law PHRA claim since her federal claim (ADEA) will not be permitted to proceed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130 (1966). *See also* 28 U.S.C. § 1367(c)(3); *Verdecchia v. Prozan*, 274 F.Supp.2d 712, 728 (W.D. Pa. 2003).

VI.     **CONCLUSION.**

Based on the above, the Court shall deny Plaintiff's Motion *in Limine* in its entirety.  **(Doc. 38).**   The Court will dismiss with prejudice Plaintiff's request for declaratory judgment in her Amended Complaint.  The Court shall grant Defendants' Summary Judgment Motion **(Doc. 30)** with respect to Plaintiff's age discrimination claims raised in her Amended Complaint under the ADEA and the PHRA. The Court shall also enter Judgment in favor of Defendants and against Plaintiff Lowe, and  close this case.




                                                    **s/ Thomas M. Blewitt**
                                                    **THOMAS M. BLEWITT**
                                                    **United States Magistrate Judge**
**Dated: April 10, 2014**